Co., 210 N. Y. 96, 103 N. E. 895; Chrystal v. Troy & Boston R. Co., 105 N. Y. 164, 11 N. E. 380; Kenyon v. N. Y. Cent. & H. R. R. R. Co., 5 Hun, 479, affirmed 76 N. Y. 607; Rosenthal v. N. 'Y., Susquehanna & W. R. R. Co., No. 1, 112 App. Div. 431, 98 N. Y. Supp. 476; Bragg v. Central New England Railway Co., 152 App. Div. 444, 137 N. Y. Supp. 273; Burgess v. Long Island Railroad Co., 153 App. Div. 379, 138 N. Y. Supp. 560. See, also, section 42a, c. 565, Laws of 1890, as added by chapter 657, Laws of 1906; Hallock v. New York, O. & W. R. Co., 197 N. Y. 450, 90 N. E. 1124; Breed v. Lehigh Valley Railroad Co., 131 App. Div. 492, 493, 115 N. Y. Supp. 1019; Connell v. New York Central & H. R. R. R. Co., 144 App. Div. 664, 669, 129 N. Y. Supp. 666.

The plaintiff would uphold her verdict by pointing to evidence that a sharp whistle was heard; that at that time the train was such a distance from the body of Bragg that, had the engineer then begun to use the means available to stop the train, the train, in the opinion of persons skilled in the operation of locomotives, could have been brought to a standstill before it reached Bragg. There was some evidence that the engineer did not slow down until after Bragg was struck. There was no evidence as to the position of the train in relation to Bragg when it became apparent that Bragg did not hear or heed the warning whistle. The plaintiff's only witness that gave evidence of essential facts testified that he was expecting Bragg would jump up every minute and that nothing impressed him with the idea that Bragg was asleep.

This evidence falls short of its purpose. The jury could not assume that the engineer willfully and recklessly ran upon Bragg after discovering Bragg's inertia. Such a conclusion must not rest upon conjecture; it must be supported by evidence. The engineer had the right to assume that a body apparently human, when in peril from an approaching train in broad daylight, would, in obedience to a warning whistle, leave the track in time to escape injury. No negligence could be imputed until that assumption was made unwarrantable by some circumstance which would command the attention of a reasonably careful man.

There was no evidence of lack of reasonable care in the management of the train, and the complaint should have been dismissed.

The judgment and order should be reversed, and judgment directed dismissing plaintiff's complaint, with costs. All concur.

---

## LONGWORTH v. EAST RIVER NAT. BANK.

(Supreme Court, Appellate Division, First Department. February 13, 1914.)

1. EVIDENCE (§ 372*)—DOCUMENTARY EVIDENCE—ANCIENT DOCUMENTS.

In an action against a national bank to compel it to issue a certificate of stock in place of a certificate issued to B. by its predecessor, a state bank, an assignment on the back of the certificate, dated in 1865, bearing the purported signature of B., witnessed by H., was not admissible with-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

out proof of the signatures of B. or H., where it appeared that it was found among the papers of plaintiff's grandfather, there was no evidence of any connection between B. and such grandfather from which it could be inferred that the document came from its proper custodian, the person alleged to have found it was not produced as a witness, and it was admitted that for more than ten years neither B. nor the grandfather had been upon the books of the bank as a stockholder, and that B.'s stock was sold and his account with the bank closed by crediting the amount of the sale and two dividends on the stock in 1867, since the rule that an ancient document is admissible without direct proof of its execution, if it appears to be at least 30 years old, is subject to the provision that it must be found in the proper custody and be unblemished from alterations and otherwise free from suspicion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

2. EVIDENCE (§ 370*)—STOCK—OWNERSHIP—SUFFICIENCY OF EVIDENCE.
   The production of a certificate of stock issued to B., without proof of the authenticity of the assignment on the back thereof or that plaintiff or any of his predecessors in possession were purchasers or holders for value, did not establish title to the stock.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1538, 1559, 1560, 1562–1578, 1592; Dec. Dig. § 370.*]

Appeal from Special Term, New York County.

Action by Irwin T. Longworth against the East River National Bank. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

See, also, 153 App. Div. 891, 137 N. Y. Supp. 1127.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Wood, Cooke & Seitz, of New York City (Robert H. Griffin, of New York City, of counsel), for appellant.

Anderson, Iselin & Anderson, of New York City (Outerbridge Horsey, of New York City, of counsel), for respondent.

CLARKE, J.   Prior to May 1, 1865, the East River Bank, which had been organized under the laws of the state of New York, was in existence.   On the 2d of July, 1864, it issued its certificate of stock, No. 394, for 27 shares, to James B. Burgess.   On May 1, 1865, the said bank duly surrendered its charter and became a banking association under the name of the East River National Bank, pursuant to the statutes of the United States and chapter 97 of the Laws of 1865 of the state of New York.

This action is brought to compel the defendant to issue, in place of the certificate for 27 shares of the East River Bank originally issued to said Burgess which plaintiff has in his possession, a certificate for such number of shares of the East River National Bank as plaintiff may be entitled to under the reorganization, and that the defendant account for and pay to plaintiff all arrears of dividends now remaining unpaid on said 27 shares or on the equivalent thereof in shares of the defendant.

[1] It was admitted upon the trial that, upon the conversion of the said state bank into a national bank, Burgess, as the holder of 27

shares in the old bank, became entitled to 33 shares in the new bank. Upon the trial the plaintiff offered the original certificate of stock of the East River Bank. This bore upon its back an assignment dated the 31st day of October, 1865, bearing the purported signature of James B. Burgess with a seal and the underwriting "sealed and delivered in the presence of Wm. Highet." No testimony as to the signature of Burgess or the witness Highet was given, but the court received the certificate in evidence, over objection and exception.

The plaintiff testified:

"My brother gave me this certificate of stock as a gift. I did not pay any money for it. * * * I think the certificate was given to him by my father. * * * My father said that this certificate was among some papers of my grandfather's. My grandfather's name was Peter Longworth. He died about 19 years ago. My father is not dead. He lives in New Jersey."

He further testified that the name J. Brower Longworth was written by his brother in the blank left for the transferee's name on the assignment on the back of the certificate.

The finding of the learned court, at the request of the plaintiff, though not contained in the decision, that "each and all of the signatures of such certificate of stock and to the transfer and power of attorney indorsed thereon were genuine and bona fide," was without evidence to support it, so far as the signature of Burgess and the witness Highet were concerned. While it is the rule that an ancient document is admissible in evidence without direct proof of its execution, if it appears to be of the age of at least 30 years, that rule is coupled with a proviso that it be found in the proper custody and is unblemished from alterations and otherwise free from suspicion. See 17 Cyc. 443, and the authorities there cited, including Clark v. Owens, 18 N. Y. 434.

The ancient document rule is inapplicable. The certificate offered bore date July 2, 1864, and was issued by a corporation which went out of existence May 1, 1865. The sole testimony in regard to it is that it was found among the papers of plaintiff's grandfather, one Longworth, who died 19 years before the trial, without a particle of evidence to show any connection between Longworth and Burgess from which it could be even remotely inferred that said document came from the proper custodian thereof. Besides, the person alleged to have found it is not produced to testify as to the circumstances surrounding the custodianship or the finding. This, coupled with the fact that it is admitted that for upwards of ten years past neither J. Brower Longworth nor James B. Burgess has been upon the books of the bank as a stockholder thereof, and that it is shown by the books of the bank that Burgess' stock was sold on April 6, 1867, and his account with the bank was closed on May 16, 1867, by crediting the amount of the sale and two dividends on said stock, demonstrates that the admission of said certificate in evidence was error.

[2] Without proof of the authenticity of the assignment of said stock, and it not appearing that plaintiff or any of his predecessors in possession were purchasers or holders for value, the bare production of the certificate was insufficient to establish title to the stock.

The judgment appealed from should be affirmed, with costs and disbursements to the respondent, but the eighth of the plaintiff's proposed findings found by the court, so far as it finds that the signature to the transfer and power of attorney indorsed on the certificate of stock is genuine and bona fide, should be reversed as not supported by the evidence. All concur.